UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| RYAN TUCKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:20-CV-00987-NCC |
| | ) | |
| EXPRESS SCRIPTS HEALTH AND | ) | |
| WELFARE BENEFITS PLAN,[1] | ) | |
| METROPOLITAN LIFE INSURANCE | ) | |
| COMPANY, and EXPRESS SCRIPTS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff Ryan Tucker's Motion for Discovery (Doc. 24) and Defendants Express Scripts Inc. Health Plan, Metropolitan Life Insurance Company, Express Scripts, Inc.'s interrelated Motion for Summary Judgment on Count II of Plaintiff's Complaint (Doc. 28). The motions are fully briefed and ready for disposition. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 13). For the following reasons, Plaintiff's Motion will be **DENIED** and Defendants' Motion will be **GRANTED**.

### I. Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56(a), a court may grant a motion for summary judgment if "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

---

[1] As noted by Defendants in their Motion for Leave to Amend Their Separate Answers, Defendant Express Scripts Health and Welfare Benefits Plan was improperly named in Plaintiff's Complaint as Express Scripts, Inc. Health Plan (*See* Doc. 27). The Court granted Defendants' Motion and will direct the Clerk of Court to update the docket accordingly.

The burden is on the moving party. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op. Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). Once the moving party demonstrates that there is no genuine issue of material fact, the nonmovant must do more than show there is some doubt as to the facts. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party bears the burden of setting forth affirmative evidence and specific facts by affidavit and other evidence showing a genuine factual dispute that must be resolved at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex*, 477 U.S. at 324. "A dispute about a material fact is 'genuine' only 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Herring v. Canada Life Assur. Co.*, 207 F.3d 1026, 1030 (8th Cir. 2000) (quoting *Anderson*, 477 U.S. at 248). In ruling on a motion for summary judgment, all reasonable inferences must be drawn in a light most favorable to the non-moving party. *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005). The evidence is not weighed and no credibility determinations are made. *Jenkins v. Winter*, 540 F.3d 742, 750 (8th Cir. 2008).

## II. Background

Plaintiff Ryan Tucker ("Tucker") filed this action pursuant to the Employment Retirement Income Security Act of 1974, as amended 29 U.S.C. § 1001, *et. seq.* ("ERISA") against Defendants Express Scripts Health and Welfare Benefits Plan ("the Plan"), Express Scripts, Inc. ("Express Scripts") (collectively, "Express Scripts Defendants"), and Metropolitan Life Insurance Company ("Met Life") (all collectively, "Defendants") for denial of benefits pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) (Count I) and breach of fiduciary duty pursuant to ERISA § 409(a), 29 U.S.C. § 1109(a) (Count II). The undisputed facts are as

follows:[2]

Tucker, a former employee of Express Scripts, was a participant in the Plan. Tucker was paid long term disability benefits under the Plan for the 24-month period of January 7, 2015 through January 6, 2017. On December 20, 2016, MetLife informed Tucker that his benefits would be discontinued as of January 7, 2017, based on a finding that Tucker's disabling conditions fell under the limited benefit provision in the Plan. The letter stated, in part:

> In reviewing your file, the medical documentation indicates that you are disabled due to Post Viral Fatigue, Fibromyalgia and Bipolar Disorder. These diagnoses fall under the limited benefit provision in the Plan which has a limitation of 24 Months.
>
> The medical documentation in your claim file notes your last day worked was July 7, 2014 with a date of disability of July 8, 2014. Your benefits began on January 7, 2015. Your [sic] initially went out of work due to Bipolar Disorder which falls under the above-mentioned limited benefit provision. As of January 13, 2016, you had been diagnosed with Epstein Barr Virus and ongoing Post-viral Fatigue Syndrome. The policy limits Chronic Fatigue Syndrome and related conditions.
>
> The medical review was done on your file by Dr. Dupe Adewunni M.D., M.P.H. on May 23, 2016, with an addendum done on December 12, 2016. Updated records from your office visit on November 17, 2016, with Dr. Jennifer Sewing were received, and reviewed. In the addendum completed by Dr. Adewunni, he agreed with Dr. Sewing, that based on your Post Viral Fatigue Syndrome your restrictions and limitations would be: part-time work 4 hours daily with a gradual increase in hours over time.
>
> Despite these restrictions of part-time work, your conditions of Bipolar Disorder, Fibromyalgia and Post-Viral Fatigue Syndrome fall under the limited benefit provision of your Plan. As such, no benefits will be payable beyond January 6, 2017.
>
> Based on a review of your entire file, our records indicate that you will have received 24 months of LTD benefits on January 6, 2017, for Post Viral Fatigue, Fibromyalgia and Bipolar Disorder and this is the maximum period payable under the Plan for Limited Disability Benefits. Therefore, your benefits are scheduled to end on January 6, 2017. No additional benefits will be payable after January 6, 2017, and your disability claim

---

[2] The facts are taken from Defendants' Statement of Uncontroverted Material Facts, Plaintiff's Response to Defendants' Statement of Material Facts, and the documents cited therein (Docs. 29, 39).

will have been paid in full in accordance with the terms of the Plan.

Tucker appealed MetLife's determination letter in accordance with the Plan's administrative review process by letter dated May 26, 2017. Tucker's appeal letter states, in relevant part, as "Reason #2 why is claim was improperly denied," that:

> MetLife, on several occasions informed me that [Post-Viral Fatigue Syndrome] is a covered non-limited benefit.
>
> In the fall months of 2016, I spoke with Laurie Johnson from MetLife several times, and on each occasion she told me [Post Viral Fatigue Syndrome ("PVFS")] is a covered non-limited benefit. It wasn't until 12/07/16 that Alyson Huff called me to inform me that my PVFS diagnosis falls under [Chronic Fatigue Syndrome ("CFS")] and has limited benefits for 24 months, and I would lose benefits on 01/07/2017. I relied on the information given to me by Laurie[]Johnson with confidence regarding the coverage and non·limited [sic] benefit of PVFS.

(ML00505).[3] By letter dated August 1, 2017, MetLife upheld its determination that Tucker's benefits were limited to a 24-month period and that he had received the maximum benefits allowed under the Plan—

> In conclusion, upon completion of a thorough review of all the information contained in your claim file, taking into consideration the [Independent Physician Consultant ("IPC")] findings, it was determined that the clinical evidence supported limitations due to CFS which is a limited condition. The clinical evidence did not support an active infection process [for Epstein-Barr Virus ("EBV")]. Therefore, your disability is limited to a 24 month [sic] period and you received the maximum benefits allowed under your Plan and the decision to terminate benefits as of January 7, 2017 was appropriate.

(ML00451-ML00455).

On January 15, 2021, Tucker filed a Motion for Discovery indicating that the parties disagree on the scope of discovery in this ERISA action (Doc. 24). Tucker asserts that he is

---

[3] For consistency's sake and in line with the practice of the parties, the Court will refer to the administrative record found at Doc. 23 by the bates numbering associated with the specific documents.

4

entitled to discovery on both Counts because this matter is to be reviewed under the *de novo* standard and there is good cause of discovery beyond the administrative record; and discovery is necessary in all claims brought under § 1132(a)(3) (Doc. 26). Tucker seeks the following discovery:

> (1) Written discovery directed to MetLife regarding its claim review processes, including, but not limited to, the policies and standards in place for its reviewers and what weight is to be given to evidence;
>
> (2) Written discovery directed to MetLife regarding what it considered a mental health condition and all standards and practices in place to guide the determination that the twenty-four-month limitation applies;
>
> (3) The deposition of MetLife employee Ann Marie Hess who made decision to deny Mr. Tucker's benefits; and
>
> (4) The deposition of Dr. Sara J. (Becker) Keiler.

(*Id.* at 9). Tucker indicates that each deposition would not take longer than one hour (*Id.*).

In addition to responding to Tucker's Motion for Discovery, Defendants filed a related Motion for Summary Judgment on Count II of Plaintiff's Complaint (Doc. 28). Defendants argue that Tucker asserts "plan-based claims 'artfully dressed in statutory clothing'" because his fiduciary duty claim amounts to a recharacterization of Tucker's claim for benefits (*Id.* at 2-3 (quoting *Jones v. Aetna Life Ins. Co.,* 943 F.3d 1167, 1169 (8th Cir. 2020))). As his May 26, 2017 appeal of the termination of his LTD benefits did not raise a breach of fiduciary duty claim, Tucker failed to exhaust his administrative remedies with respect to this claim and is therefore barred from pursuing it (*Id.* at 3). As previously noted, both motions are fully briefed and ready for disposition.

5

### III. Analysis

**A. Count I: Wrongful Denial of Benefits**

In Count I, Tucker asserts a claim for LTD benefits pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). Tucker alleges that Defendants wrongfully denied him benefits when they denied Tucker's claim for long term disability beyond twenty-four months. Tucker asserts he is entitled to benefits retroactively from January 7, 2017, to the present and going forward for as long as his condition remains and he meets the provisions of the Plan. Tucker seeks limited discovery on Count I, arguing that the applicable standard of review is *de novo* and there is good cause for discovery beyond the administrative record.

ERISA allows a plan participant or beneficiary to file a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Courts review a denial of benefits under an ERISA plan *de novo* unless the plan gives the administrator or fiduciary discretion to determine eligibility for benefits, in which case an abuse of discretion standard of review is used. *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 111 (2008); *Waldoch v. Medtronic, Inc.*, 757 F.3d 822, 829 (8th Cir. 2014), as corrected (July 15, 2014) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). Here, the Plan expressly grants MetLife "discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits in accordance with the terms of the Plan" (Doc. 31-3 at 5).

Tucker nonetheless asserts that the standard of review in this matter is *de novo* because Minnesota law bans discretionary clauses (Doc. 26 at 3). Tucker argues that Minnesota law

6

should apply because Express Scripts Holding Company, the policyholder, and Express Scripts Inc., the plan sponsor, are both Minnesota companies (Doc. 26 at 4-5).  Tucker further asserts that the LTD policy was delivered by MetLife to the Express Scripts Defendants in Minnesota (*Id.* at 5).  In response, Defendants assert that Express Scripts, Inc. and Express Scripts Holding Company were incorporated in Delaware and have their principle place of business in St. Louis, Missouri (Doc. 31-2).  Defendants further argue that the Group Term Life and Accident and Health Insurance Policy, Group No. 114749-1-G (the "Policy") expressly states: "This policy is issued for delivery in and governed by the laws of Missouri" (Doc. 31-1).  Of note, defense counsel indicates that the Policy was received by counsel on the day she filed the response in opposition and motion for summary judgment (Doc. 31 at 2, n.1).

In his reply, Tucker does not dispute the residence of Defendants but, instead, asserts that Defendants failed to produce the Policy, attached as Exhibit A to Defendant's Memorandum in Opposition to Plaintiff's Motion for Discovery, as required pursuant to 29 C.F.R. § 2560.503-1[4] (Doc. 32 at 1).  Tucker argues that if the Court finds that the document is relevant to Tucker's claim and governs the choice of law applicable to the standard of review, he should be permitted to amend his complaint to add a cause of action under 29 U.S.C. § 1132(c) for the failure to produce plan documents (*Id.* at 1, n.1).  Alternatively, if the Court finds that the document is not relevant, then Tucker asserts that the claim is governed by the documents in the administrative record which bear no reference to the state of Missouri but lists the Minnesota mailing addresses for both Express Scripts Defendants (*Id.* at 2).  Regardless, Tucker argues, the untimely

7

production of the Policy serves to support a less deferential review of the decision to deny Tucker benefits and provides further grounds for discovery in this matter including, "at the very least," limited discovery into what document governs the plan and why the documents changed and/or were not produced when requested (*Id.* at 3). With leave of Court, Defendants filed a surreply to address this issue (Doc. 37). Defendants respond that the Policy is not "relevant" under the applicable regulatory scheme as it could not be relied upon nor was it relied upon in making the benefit determination (*Id.* at 3). However, the Policy is properly considered when determining where the Policy was delivered and which state's law governs as the Plan Document is silent on that issue (*Id.*).

As a preliminary matter, the Court finds that the Court may consider the Policy in its choice of law determination. The relevant provisions of 29 C.F.R. § 2560.503-1 provide that a claimant is entitled to reasonable access to and copies of all documents, records and other information relevant to the claimant's claim for benefits. 29 C.F.R. §§ 2560.503-1(g)(11)(vii)(D), (h)(2)(iii). A document, record, or other information is considered "relevant" to a claimant's claim if it: (i) Was relied upon in making the benefit determination; (ii) Was submitted, considered or generated in the course of making the benefit determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination; (iii) Demonstrates compliance with the administrative processes and safeguards required pursuant to paragraph (b)(5) of this section in making the benefit determination; or (iv) In the case of a group health plan or a plan providing disability benefits,

---

[4] Section 2560.503-1 establishes the "minimum requirements for employee benefit plan procedures pertaining to claims for benefits by participants and beneficiaries." 29 C.F.R.

constitutes a statement of policy or guidance with respect to the plan concerning the denied treatment option or benefit from the claimant's diagnosis, without regard to whether such advice or statement was relied upon in making the benefit determination. 29 C.F.R. § 2560.503-1(m)(8)(i)-(iv).

As pertinent here, the Policy is not relevant as to the benefit determination. The terms of the Plan are not included in the Policy, rather the Policy addresses many of the terms between the policyholder, Express Scripts, and the Plan administrator, MetLife, including premium rates, termination and reinstatement of the Policy, and other general provisions (Doc. 31-1). Thus, Tucker was not entitled to its disclosure. *See Tompkins v. Cent. Laborers' Pension Fund*, 712 F.3d 995, 1000 (7th Cir. 2013) (finding ERISA plan administrator did not act in bad faith when it did not disclose documents not relevant to the participant's claim for benefits). The Policy does, however, impact the choice of law determination. As noted by Defendants, the Policy is referenced by the Plan Document as the Plan Document sets forth the benefits and rights of the beneficiary employee under the Policy (ML00001-ML00063). Therefore, given the express provision of the Policy indicating that it was issued for delivery in and is governed by the laws of Missouri as well as the Plan's and Express Scripts' residence in Missouri, the Court finds Missouri law applies here. *Brake v. Hutchinson Tech. Inc. Grp. Disability Income Ins. Plan*, 774 F.3d 1193, 1197 (8th Cir. 2014) (finding that, to the extent an area of state law is not preempted by ERISA, a choice-of-law clause in an ERISA plan should be followed as long as the clause is not unreasonable or fundamentally unfair.); *Hamilton v. Standard Ins. Co.*, 516 F.3d 1069, 1073

---

§ 2560.503-1 (a).

(8th Cir. 2008) (clarifying that the group policyholder's residence determines the state insurance laws that apply to the policy).

ERISA does not preempt any state law or regulation that governs or regulates insurance policies. *Kentucky Ass'n of Health Plans, Inc. v. Miller*, 538 U.S. 329, 333-34 (2003); *Brake*, 774 F.3d at 1196. In 2009, Missouri joined the Interstate Insurance Product Regulation Compact and created the Interstate Insurance Product Regulation Commission. Mo. Rev. Stat. § 374.351. The Interstate Insurance Product Regulation Commission adopted a regulation prohibiting discretionary clauses in certificates of insurance. Group Annuity Certificate Uniform Standards for Employer Groups, Insurance Compact Commission § 4G (December 9, 2019), https://www.insurancecompact.org/documents/standards_a_02_g_cert.pdf. However, the regulation is inapplicable in this instance. The regulation was not adopted until December 9, 2019, and, by its terms, did not become effective until March 30, 2020, well after the events in this case (*Id.*).[5] *See, e.g., Brake*, 774 F.3d at 1196 (finding, in part, South Dakota law inapplicable where the statute only applied to insurance policies issued or renewed after a certain date and the events underlying the action occurred prior to that date).

Even in the absence of a ban on discretionary clauses, some limited discovery may be permissible in certain ERISA cases, but only if the plaintiff demonstrates good cause. *Scheff v.*

---

[5] The Court will not address Defendants' alternative assertion that there is no evidence that the relevant certificate of insurance was submitted to the Interstate Insurance Product Regulation Commission for review and approval because to do so would suggest that the laws of Missouri would not apply in this instance (Doc. 31 at 5). *See* Mo. Rev. Stat. § 374.352 ("[I]t is not intended for the Commission to be the exclusive entity for receipt and review of insurance product filings. Nothing herein shall prohibit any Insurer from filing its product in any State wherein the Insurer is licensed to conduct the business of insurance; and any such filing **shall be subject to the laws of the State where filed**.") (emphasis added).

*Blue Cross Blue Shield of N. Dakota*, No. 4:15-CV-173, 2020 WL 3086874, at *2-3 (D.N.D. June 10, 2020).  Courts in this district have limited the scope of this discovery to determining whether a conflict of interest or procedural irregularity exists.  *See, e.g., Barnes v. Ascension Health All.*, No. 4:16CV2170 CEJ, 2017 WL 3006882 (E.D. Mo. July 14, 2017); *Maly v. Trustees of Local 309 Wireman's Pension Tr.*, No. 4:11CV00675 AGF, 2011 WL 5597316 (E.D. Mo. Nov. 17, 2011); *Sampson v. Prudential Life Ins. Co. of America*, No. 4:08CV1290 CDP, 2009 WL 882407 (E.D. Mo. Mar. 26, 2009); *T.D.E. v. Life Ins. Co. of No. America*, No. 4:07CV1387 CDP, 2009 WL 367701 (E.D. Mo. Feb. 11, 2009); *Winterbauer v. Life Ins. Co. of No. America*, No. 4:07CV1026 DDN, 2008 WL 4643942 (E.D. Mo. Oct. 27, 2008).  Conflicts of interest exist whenever the same entity both determines benefits eligibility under an ERISA plan and pays the benefits out of its own pocket.  *Glenn*, 554 U.S. at 112.  A procedural irregularity is said to exist where the plan administrator, in the exercise of its power, acted dishonestly, from improper motive, or failed to use sound judgment in reaching its decision.  *Menz v. Procter and Gamble Health Care Plan*, 520 F.3d 865, 869 (8th Cir. 2008) (citing *Neumann v. AT & T Commc'ns, Inc.*, 376 F.3d 773, 781 (8th Cir. 2004)).  Often, a conflict of interest or procedural irregularity will be apparent from the administrative record.  *Farley v. Arkansas Blue Cross & Blue Shield*, 147 F.3d 774, 776 n.4 (8th Cir. 1998).  As a result, "the district court will only rarely need to permit discovery and supplementation of the record to establish these facts."  *Id.* (emphasis added).  Discovery is not permitted on the merits of the benefit claim, even if the conflict of interest or procedural irregularity is shown.  *See Atkins v. Prudential Ins. Co.,* 404 F. App'x 82, 84-85 (8th Cir. 2010).

11

MetLife concedes that it is both the insurer and the claim fiduciary (*See* Doc. 31 at 7). However, the existence alone of such a conflict is insufficient to establish a different standard of review warranting additional discovery. *Glenn*, 554 U.S. at 115. Instead, the conflict "should be weighed as a factor in determining whether there is an abuse of discretion." *Id.* Tucker asserts good cause exists because MetLife relied on the opinion of the IPC hired by MetLife, Dr. Sara J. (Becker) Keiler, that his EBV was no longer active and his primary diagnosis was CFS, in direct contradiction to the opinion of Tucker's treating physician, Dr. Jennifer Sewing (Doc. 25 at 6). By relying on the Dr. Keiler's opinion, Tucker argues, MetLife inappropriately denied Tucker benefits (*Id.*). In response, Defendants argue that there is a dispute whether Tucker's CFS stemmed from recurring EBV infections (Doc. 31 at 7). Additional discovery is unwarranted when, as is the case here, the administrative record is sufficient to permit a fair evaluation of the decision. *See Jones v. ReliaStar Life Ins. Co.,* 615 F.3d 941, 945 (8th Cir. 2010) (affirming the district court's denial of leave to conduct discovery because the "administrative record is sufficient to permit a fair evaluation" of the administrator's decision and the plaintiff offered no convincing reason why the record should be expanded). The differing medical opinions regarding the extent and nature of Tucker's disability lies at the heart of a merits-based ERISA determination and does not establish a conflict of interest or procedural irregularity. The mere use of an independent physician consultant is not sufficient to establish a conflict. *See generally Samuel v. Citibank, N.A., Long Term Disability Plan,* No. CIV. 07-4051, 2009 WL 1097484, at *2 (D.S.D. Apr. 22, 2009); *Lee v. Kaiser Found. Health Plan Long Term Disability Plan*, 563 F. App'x 530, 531 (9th Cir. 2014); *Frankton v. Metro. Life Ins. Co.*, 432 F. App'x 210, 216 (4th Cir. 2011) (finding the use of independent physician consultants and generalized allegations of

12

bias insufficient to establish a conflict). To the extent there is a conflict, the conflict is apparent on the record as it is both undisputed that MetLife is the insurer and claim fiduciary and that Dr. Keiler was hired by MetLife to issue a medical opinion. Therefore, as to Count I, Tucker's Motion for Discovery is denied.

**B. Count II: Breach of Fiduciary Duty**

In Count II, Plaintiff asserts a Breach of Fiduciary Duty claim pursuant to ERISA § 409(a), 29 U.S.C. § 1109(a) (Count II). Tucker alleges that Defendants intentionally, recklessly, and/or negligently made material misrepresentations to Tucker through their affirmative statements and omissions about his eligibility for benefits under the Plan (Doc. 1 at ¶58). Specifically, Tucker alleges that the Plan limited benefits provision did not state that EBV is a limited benefit condition, but Tucker's benefits have been limited to 24 months (*Id.* at ¶¶61-62). As with Count I, Tucker seeks the following relief: (A) the Court enter judgment in the Plaintiff's favor and against the Defendants; (B) the Court order the Defendants to pay the Plaintiff the Benefits retroactively from January 7, 2017; (C) the Court order the Defendants to pay the Plaintiff prejudgment interest on all Benefits that have accrued prior to the date of judgment at the maximum rate allowed; (D) the Court order the Defendants to continue paying the Plaintiff so long as he meets the Plan's terms and conditions for receipt of Benefits; (E) the Court award attorneys' fees pursuant to 29 U.S.C. § 1132(g); and (F) the Court award any and all other relief to which the Plaintiff may be entitled (*Id.* at 10).

As a preliminary matter, the Court must first address Defendants' argument in their Motion for Summary Judgment that Tucker's Count II should be dismissed as Tucker did not exhaust his administrative remedies with respect to that claim (Doc. 28). Specifically,

Defendants argue that Tucker is barred from pursuing his breach of fiduciary duty claim because the claim itself is a "plan-based claim[] 'artfully dressed in statutory clothing'" and he failed to exhaust administrative remedies when he did not raise it in his May 26, 2017 appeal of the termination of his LTD benefits (*Id.* at 2-3 (quoting *Jones v. Aetna Life Ins. Co.*, 943 F.3d 1167, 1169 (8th Cir. 2020))).

"Exhaustion of contractual remedies is required in the context of a denial of benefits action under ERISA when there is available to a claimant a contractual review procedure" in compliance with applicable regulations and the claimant has notice of the procedure, as was the case here. *Jones*, 943 F.3d at 1168 (internal quotation marks omitted). "Exhaustion minimizes frivolous lawsuits, promotes consistent treatment of claims, and enhances the ability of trustees to interpret plan provisions." *Id.* However, "[t]he exhaustion requirement is not absolute" as claimants are excused from the requirement for a number of procedural reasons as well as when pursuing exhaustion would prove to be futile. *Brown v. J.B. Hunt Transp. Servs., Inc.*, 586 F.3d 1079, 1085 (8th Cir. 2009). Further, only *claim* exhaustion is required, not issue or theory exhaustion. *Chorosevic v. MetLife Choices*, 600 F.3d 934, 942 (8th Cir. 2010) (quoting *Wolf v. Nat'l Shopmen Pension Fund*, 728 F.2d 182, 186-87 (3d Cir. 1984)) (emphasis in original). The Eighth Circuit Court of Appeals has expressly declined to address whether administrative exhaustion is required for an ERISA breach-of-duty claim, a statutory right. *Jones*, 943 F.3d at 1169 ("This court need not decide this issue here."). Instead, the Court determined that the "statutory claims exception to the exhaustion requirement does not apply to plan-based claims 'artfully dressed in statutory clothing,' such as where a plaintiff seeks to avoid the exhaustion requirement by recharacterizing a claim for benefits as a claim for breach of fiduciary duty." *Id.*

14

(quoting *Hitchcock v. Cumberland Univ. 403(b) DC Plan*, 851 F.3d 552, 563-64 (6th Cir. 2017)). In *Jones v. Aetna Life Insurance Company*, the Eighth Circuit Court of Appeals found the plaintiff's allegations of fiduciary breaches to be rooted in the plan administrator's internal policies and procedures and thus unexhausted when not raised according to the plan administrator's appeal process. *Id.* at 1169.

The Court here need not decide whether exhaustion of administrative remedies is mandatory for claims for breach of fiduciary duty because Tucker's conflict of interest claims are plan-based claims "artfully dressed in statutory clothing" and, thus, warrant exhaustion under *Jones*. *Id.* at 1168. Tucker's allegations of breach of fiduciary duty are rooted in the handling of his claim and in his contention that his benefits were erroneously limited to 24 months because EBV is his primary condition and is not listed as a limited condition under the Plan. In fact, this is the sum of Tucker's allegations in his Complaint. Although Tucker raised his benefits denial claim during the administrative appeal process, Tucker failed to raise this conflict of interest claim. Instead, Tucker asserted, and MetLife addressed, a concern regarding misinformation provided to him about the Plan status of PVFS, defined by the parties as the link between CFS and EBV, as a limited or a nonlimited condition. However, Tucker's claim was not denied because MetLife determined PVFS is a limited condition under the Plan but because MetLife determined Tucker's primary condition was CFS and was limited under the Plan. Thus, the Court will grant Defendants' Motion for Summary Judgment and dismiss Count II.

### IV. Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that the Clerk of Court shall update the docket to reflect

that Defendant Express Scripts Inc. Health Plan is properly named as **Express Scripts Health and Welfare Benefits Plan**.

**IT IS FURTHER ORDERED** that Plaintiff Ryan Tucker's Motion for Discovery (Doc. 24) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants Express Scripts Health and Welfare Benefits Plan, Metropolitan Life Insurance Company, Express Scripts, Inc.'s interrelated Motion for Summary Judgment on Count II of Plaintiff's Complaint (Doc. 28) is **GRANTED** and Count II is **DISMISSED, with prejudice**.

A separate partial order of dismissal will accompany this Memorandum and Order.

Dated this 10th day of May, 2021.

 /s/ Noelle C. Collins  
NOELLE C. COLLINS  
UNITED STATES MAGISTRATE JUDGE
