**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| **RYAN TUCKER,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No.  4:20-CV-00987-NCC** |
| ) | |
| **EXPRESS SCRIPTS HEALTH AND** ) | |
| **WELFARE BENEFITS PLAN,** ) | |
| **METROPOLITAN LIFE INSURANCE** ) | |
| **COMPANY, and EXPRESS SCRIPTS, INC.,**) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff Ryan Tucker's Motion for Summary

Judgment (Doc. 50) and Defendants Express Scripts Inc. Health and Welfare Benefits Plan,

Metropolitan Life Insurance Company, and Express Scripts, Inc.'s Motion for Summary

Judgment on Count I of Plaintiff's Complaint (Doc. 53).  The motions are fully briefed and ready

for disposition.  The parties have consented to the jurisdiction of the undersigned United States

Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 13).  For the following reasons,

Plaintiff's Motion will be **DENIED** and Defendants' Motion will be **GRANTED**.

### I. Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56(a), a court may grant a motion for

summary judgment if "there is no genuine issue as to any material fact and [] the moving party is

entitled to [] judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The burden is on the moving party. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op. Inc.*,

838 F.2d 268, 273 (8th Cir. 1988).  Once the moving party demonstrates that there is no genuine

issue of material fact, the nonmovant must do more than show there is some doubt as to the facts.

*Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Instead, the nonmoving party bears the burden of setting forth affirmative evidence and specific facts by affidavit and other evidence showing a genuine factual dispute that must be resolved at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex*, 477 U.S. at 324.  "A dispute about a material fact is 'genuine' only 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Herring v. Canada Life Assur. Co.*, 207 F.3d 1026, 1030 (8th Cir. 2000) (quoting *Anderson*, 477 U.S. at 248).  In ruling on a motion for summary judgment, all reasonable inferences must be drawn in a light most favorable to the non-moving party.  *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005).  The evidence is not weighed and no credibility determinations are made.  *Jenkins v. Winter*, 540 F.3d 742, 750 (8th Cir. 2008).

When cross motions for summary judgment are filed, each summary judgment motion must be evaluated independently to determine whether a genuine issue of material fact exists and whether the movant is entitled to judgment as a matter of law.  *Husinga v. Federal-Mogul Ignition Co.*, 519 F.Supp.2d 929, 942 (S.D. Iowa 2007).  "[T]he filing of cross motions for summary judgment does not necessarily indicate that there is no dispute as to a material fact, or have the effect of submitting the cause to a plenary determination on the merits."  *Wermager v. Cormorant Township Bd.*, 716 F.2d 1211, 1214 (8th Cir. 1983).  "The usual Rule 56 standard of review applies to cross-motions for summary judgment."  *Int'l Brotherhood of Elec. Workers, Local 176 v. Balmoral Racing Club, Inc.*, 293 F.3d 402, 404 (7th Cir. 2002).  In determining the appropriateness of summary judgment, "the relevant inquiry is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one

party must prevail as a matter of law.'" *Bingaman v. Kansas City Power & Light Co.*, 1 F.3d 976, 980 (10th Cir. 1993) (quoting *Anderson*, 477 U.S. at 251-52)).

## II. Background

Plaintiff Ryan Tucker ("Tucker") filed this action pursuant to the Employment Retirement Income Security Act of 1974, as amended 29 U.S.C. § 1001, *et. seq.* ("ERISA") against Defendants Express Scripts Health and Welfare Benefits Plan ("the Plan"), Express Scripts, Inc. ("Express Scripts"), and Metropolitan Life Insurance Company ("Met Life") (all collectively, "Defendants") for denial of benefits pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) (Count I) and breach of fiduciary duty pursuant to ERISA § 409(a), 29 U.S.C. § 1109(a) (Count II).  The Court previously dismissed Count II on Defendants' Motion for Summary Judgment on Count II of Plaintiff's Complaint (Doc. 28). The undisputed facts are as follows:[1]

### A.    The Plan

Tucker, a former employee of Express Scripts, was a participant in the Plan.  Under the Plan, beneficiaries are entitled to benefits equal to 60% of their earnings until they reach the age of retirement, subject to any income which will reduce the disability benefit.  A person is disabled if he is receiving care from a physician for a sickness or injury, complying with the requirements of treatment, and unable to earn:

> during the Elimination Period and the next 24 months of Sickness or accidental injury, more than 80% of Your Predisability Earnings at Your Own Occupation from any

---

[1] The facts are taken from Plaintiff's Statement of Uncontroverted Material Facts (Doc. 52), Defendants' Response (Doc. 61), Defendants' Statement of Uncontroverted Material Facts (Doc. 55), Plaintiff's Response (Doc. 59), and Defendants' Response to Plaintiff's Statement of Additional Uncontroverted Material Facts (Doc. 64).

employer in Your Local Economy; and after such period, more than 80% of your
Predisability Earnings from any employer in Your Local Economy at any gainful
occupation for which You are reasonably qualified taking into account your training,
education and experience.

The Plan includes a Limited Disability Benefits provision which limits benefits to a coverage
period of twenty-four months if the beneficiary is disabled due to one of the following
conditions: alcohol; drug or substance addiction; mental or nervous disorders or diseases;
neuromuscular, musculoskeletal or soft tissue disorder with some exceptions; and chronic fatigue
syndrome and related conditions.

The Plan also provides:

If You become Disabled while insured, Proof of Disability must be sent to Us. When We
receive such Proof, We will review the claim.  If We approve the claim, We will pay the
Monthly Benefit up to the Maximum Benefit Period shown in the SCHEDULE OF
BENEFITS, subject to the DATE BENEFIT PAYMENTS END section.

To verify that You continue to be Disabled without interruption after Our initial approval,
We may periodically request that You send Us Proof that You continue to be Disabled.
Such Proof may include physical exams, exams by independent medical examiners, in-
home interviewers or functional capacity exams, as needed.

The Plan defines "Proof" as:

**Proof** means written evidence satisfactory to Us that a person has satisfied the conditions
and requirements for any benefit described in this certificate. When a claim is made for
any benefit described in this certificate, Proof must establish:  the nature and extent of the
loss or condition; Our obligation to pay the claim; and the claimant's right to receive
payment.

Met Life is both the funder of long-term disability benefits and the claim fiduciary with respect
to those benefits.

**B.      Tucker's Medical History**

In 2009, Tucker was diagnosed with mononucleosis.  He began experiencing symptoms
of extreme muscle weakness, fatigue, and an inability to do minimal activities of living.  Over

4

the next few years, Tucker continued to experience fatigue and reported so to his primary

physician Dr. Sewing on October 7, 2009, April 18, 2011, and March 1, 2012.  On August 21,

2013, Tucker reported to Dr. Sewing:

> That he is persistently fatigued.  He reports that after walking short distances or activities
> with his kids he is fatigued and has to take a nap.  He reports that his fatigue symptoms
> seem to have been present since he had mono a few years ago.

On July 1, 2015, he reported he was experiencing "[e]xtreme fatigue" and "isn't sure what is

going on . . . States the symptoms he has currently are like when he had mono. He states he had

mono twice in the past."

 Six months later, on January 13, 2016, Dr. Sewing listed myalgic encephalomyelitis as

one of Tucker's diagnoses.  She later identified this as another name for chronic fatigue

syndrome ("CFS").  She also stated she "[s]uspect[ed] possible chronic fatigue due to pain with

activity, fatigue and recurrent infections."  Three months later, Dr. Sewing's notes state:

> Pt reports feeling sore achy and fatigued all the time.  If he performs minimal exertion
> such as walking around the block he is sore.  It is starting to move into his upper arms. . .
> Pt states that all these symptoms started after his second mono.

She listed Tucker's diagnoses at that visit as:  Restless leg syndrome; Bipolar disorder

unspecified; Myalgic encephalomyelitis; Fibromyalgia; History of Epstein-Barr Virus infection;

Insomnia, unspecified; and Right knee pain, unspecified chronicity.  She noted, "Suspect may be

chronic fatigue developing after last case of severe mono EBV Ab VCA, IgG>600 on 1/13/16."

One month later, on May 20, 2016, Dr. Sewing's notes listed Tucker's diagnoses

similarly as: Fibromyalgia, Myopathy, Myalgic Encephalomyelitis; history of Epstein-Barr Virus

infection; restless leg syndrome; insomnia, unspecified; bipolar disorder; and low testosterone.

After the diagnosis "History of Epstein-Barr virus infection," Dr. Sewing noted, "Suspect may be

have caused, or be linked to development of myalgic encephalomyelitic developing after last case of severe mono EBV Ab VCA, IgG>600 on 1/13/16."  On June 22, 2016, Dr. Sewing listed Tucker's diagnoses as:  Fibromyalgia; bilateral leg weakness; Myopathy; Chronic Fatigue Syndrome/Hx of Epstein-Barr Virus; Myalgic Encephalomyelitis; and bipolar.  She noted Tucker was not currently taking any medications for bipolar.  Tucker informed Met Life his last visit to his psychiatrist was in June 2016.

On August 31, 2016, a nerve conduction study showed Tucker had no abnormalities.  One month later, Dr. Sewing listed Tucker's diagnoses as:  Fibromyalgia, weakness of both lower extremities; Chronic Fatigue Syndrome; Myalgia; history of Epstein-Barr virus infection; Myalgic Encephalomyelitis; and Bipolar Disorder, unspecified.  With respect to the bipolar disorder diagnosis, Dr. Sewing stated, "Currently stable off medications.  With previous manic episode, requiring medications.  Current psychiatrist does not believe that he has bipolar but there was clearly a previous manic episode.  Will monitor this closely."  Dr. Sewing's notes from November 17, 2016, state:

> Post-viral fatigue syndrome/Hx of EBV Infection: Patient her[e] to revisit symptoms. Here to re-evaluate ongoing debilitating symptoms of post-viral fatigue syndrome after second Epstein-Barr viral infection (See extremely high titers for proof of infection) . . . After proven EBV infection, significant symptoms developed.  Current symptoms include excessive fatigue, recurrent sore throat, low energy, easy muscle fatigue, joint aches, muscle aches, lack of energy, and excessive sleepiness.

She listed Tucker's diagnoses as:  PVFS (Post-Viral Fatigue Syndrome); history Epstein-Barr Virus infection; and sore throat.

On January 3, 2017, Dr. Sewing's visit notes state:

> Chronic Epstein-Barr virus: Here to f/u on the on-going issues ever[] since EBV infection and CMV infection – still with persisting symptoms related to the EBV.  Pt States that he was here "back in October" feeling fatigued, sleeping 16 hours a day, and having a soar

6

(sic) throat… Still not able to work.  Fibromyalgia: persists.  Unchanged.

On May 16, 2017, Tucker reported to Dr. Sewing that he is tired, fatigued, and sore.  Dr. Sewing listed Tucker's diagnoses as Chronic Epstein-Barr Virus infection, PVFS, and sore throat.  She started Tucker on a trial of Valtrex.  For many years, Dr. Sewing could not make an absolute diagnosis as to the cause of Tucker's fatigue symptoms.  She ruled out testosterone deficiency.

## C.    Met Life Benefits

Tucker, a staff pharmacist, stopped working on July 8, 2014.  He applied for long-term disability benefits under the Plan and on January 7, 2015, Met Life approved his benefits on the basis he was suffering from bipolar disorder.  His date of disability was determined to be July 8, 2014.

In a letter to Met Life dated April 25, 2016, Dr. Sewing listed Tucker's diagnoses as "#1 Chronic fatigue syndrome after significant EBV [Epstein-Barr Virus] infection" and "#2 Fibromyalgia."  She also stated:

> Ryan currently has chronic fatigue syndrome, also known as myalgic encephalomyelitis. Ryan suffers from extreme muscle weakness, fatigue and inability to do minimal activities of living.  This condition is chronic.  He also has lack of focus and concentration, muscle pain, migrating joint pain, headaches, sore throats, unrefreshing sleep, extreme exhaustion lasting over 24 hours after minimal physical or emotional exercise.  This disease in and of itself is disabling . . .

In a letter dated May 10, 2016, Met Life notified Tucker of the following:

> In reviewing your claim, the medical documentation indicates that you are disabled due to bipolar disorder, manic and depression, Chronic Fatigue Syndrome.  This diagnosis falls under the Plan's limited benefit provision of the Plan and has a limitation of 24 months of benefits.

> We are currently in the process of evaluating your claim for ongoing eligibility for benefits and the upcoming change in the definition of Disability as well as for the plan limit on benefits due to a limited condition . . .

Met Life then had Tucker's medical records reviewed by its Disability Director, Dr. Dupe Adewunmi, M.D., M.P.H.

Dr. Adewunmi did not perform a physical examination of Tucker. In a report dated May 23, 2016, Dr. Adewunmi noted that Dr. Sewing planned additional testing and referral to a rheumatologist for a second opinion. Dr. Adewunmi opined that the medical information and a teleconference with Dr. Sewing supported "precluding him from work till the updated medical information, additional testing as well as specialist evaluation is completed" and that "[u]pdated medical information should be reviewed in 8-12 weeks."

A copy of Dr. Adewunmi's report was sent to Dr. Sewing, who responded by letter on November 4, 2016. Dr. Sewing stated:

> I am still seeing patient Ryan Tucker. I continue to believe he is unable to do any type of work, including sedentary work due to his medical conditions. The main condition preventing him from any type of work, including part-time and including sedentary type work, is his Chronic Fatigue Syndrome or systemic exertion intolerance disease. It is not his Fibromyalgia that prevents him from working. After a mono infection and possibly another viral infection, Ryan Tucker developed Chronic Fatigue Syndrome. As you pointed out, evaluations have been done and did not detect other neurological conditions.
>
> Based on Up To Date, Mr. Tucker does indeed meet the criteria for Chronic Fatigue Syndrome or systemic exertion intolerance disease . . .

With her letter, Dr. Sewing included an article from UpToDate. This article stated that while it was hypothesized that EBV could be responsible for causing CFS, "later observations suggest that the proposed relation between EBV infection and SEID/CFS is not correct." After receiving updated medical records and Dr. Sewing's response, Dr. Adewunmi updated his report to conclude that Plaintiff could work part-time, four hours daily, with restrictions, and an anticipated gradual advancement of work hours.

In the interim, on May 26, 2016, Met Life sent a letter to Tucker stating:

> Our records show your Disability is due to Bipolar, Depression and Chronic Fatigue which are conditions that are limited under the Plan as described above.  We previously communicated the Plan limit for benefits due to these types of limited conditions is 24 months.  We have applied the limitation from January 7, 2015 to January 12, 2016.
>
> We recently determined that you are now Disabled with Epstein Barr Virus which is a condition that is not limited under the Plan.  Therefore, we will be continuing your benefits because you satisfy the definition of disability due to this non-limited condition.
>
> We will periodically require that you provide updated information concerning your disability.  Please advise us of any changes that might affect your benefits, such as improvement in your medical condition(s), a return to work or receipt of other income.

After receiving additional medical records for Tucker, on December 20, 2016, Met Life informed Tucker that his benefits would be discontinued as of January 7, 2017, based on a finding that Tucker's disabling conditions of Post Viral Fatigue, Fibromyalgia, and Bipolar Disorder fell under the limited benefit provision in the Plan.  Tucker appealed Met Life's determination letter in accordance with the Plan's administrative review process by letter dated May 26, 2017.

With his letter, Tucker submitted medical documentation including results of serologies – taken on January 15, 2016, and November 25, 2016 – that showed highly elevated levels of VCA IgG and nuclear antigen IgG, which is consistent with EBV infections.  Tucker provided evidence that his symptoms of chronic fatigue, excessive sleep, limited tolerance to both physical and mental activity, sore throat, and joint and muscle aches presented themselves after his initial EBV diagnosis in 2009.  However, the only positive mono spot test report provided to Met Life has an "Order Date" of May 12, 2011, and a "Collection Date" of January 12, 2009.  The most recent mono spot test reported to Met Life is dated July 1, 2015, and was negative.  Tucker also submitted Dr. Sewing's letter dated April 25, 2016, in which she stated Tucker was unable to work due to "Chronic Fatigue Syndrome after significant EBV infection" and a medical source

statement dated April 21, 2017, from Dr. Sewing that stated Tucker had CFS "secondary to EBV infection."

On January 1, 2017, Dr. Adewunmi submitted a second report and concluded Tucker was not disabled.  He stated:

> The treating primary care provider indicated multiple diagnoses in her past evaluation notes.  Most recently, the diagnoses indicated are chronic EBV infection with chronic fatigue and post-viral syndrome.  The primary diagnosis supported by the medical information on file is a history of chronic EBV infection with chronic fatigue.  The multiple EBV lab titers from 1/2016 and 11/2016 showed similar evidence of past EBV infection with elevated IGG, negative IGM.  He had a course of Augmentin in 5/2017 for pharyngitis.  There was no evidence of acute viral infection requiring antivirals.  While his fatigue is noted and appreciated, it is unusual that he reported no improvement after almost 3 years of past EBV infection.  It is also unusual that he reported no improvement with multiple medication trials including medications usually used to treat severe fatigue (Modafanil, Vyvance and Ritalin).  Refer to the notes by Dr. Sewing for specific clinical details.  Updated records including those from any specialists (e.g. ID specialist as noted by Dr. Sewing in her 5/2017 note) will be reviewed once available.

On June 19, 2017, Met Life submitted a request for review of Tucker's medical records by an independent physician consultant with a specialty in infectious disease.  Through a vendor, Tucker's medical records were reviewed by Dr. Sara Keiler, M.D., Board Certified in Internal Medicine with a Sub Specialty Certification in Infectious Disease.

Dr. Keiler spoke with Dr. Sewing and summarized her communications as follows:

Dr. Sewing returned my call 6/22/17 at 5:30 P.M. EST.  She reports that she has known the claimant for many ears and has noted a profound decline in his functional capacity.  She reports that his symptoms began in 2009 at which time she diagnosed him with mononucleosis.  She does not recall his exact presentation at that time.  She reports that in 2014 he had a significant decline.  He was diagnosed with bipolar disease during that time period after having a manic episode.  She does not feel that bipolar is still playing a role in his current state, and reports he is no longer being treated for it.  His symptoms have included severe fatigue despite excess sleep, limited tolerance for both physical and mental activity, sore throat, and joint/muscle aches.  He has undergone an extensive workup which has been negative, and has seen both rheumatology and infectious disease consultants.  Objectively, she denies that claimant had abnormal exam findings with the exception of intermittent shotty cervical lymphadenopathy.  She is unaware of any

cognitive deficits that he has developed during this time period.  She does not feel he is malingering and believes that he wants to work but is unable to due to severe exhaustion. He reportedly can only play with his children for 30 minutes to an hour at a time before he needs to rest and she does not believe he would be able to find employment that would support such frequent and prolonged breaks.

Dr. Keiler's report noted that Tucker's monospot tests, including his negative monospot test in July 2015, as well as his EBV serologies, were "most consistent with prior, not active EBV infection."  She also stated "his other labs have been normal, without hematologic or hepatic abnormalities, and he has not had ongoing fever to suggest a chronic infectious illness." She believed "this clinical picture is consistent with prior infection without any evidence of ongoing chronic infection."  Dr. Keiler did not conduct a physical examination of Tucker.  Dr. Keiler also reported:

> While the claimant did have a reported illness in 2009 that preceded his symptoms at which time his heterophils antibodies (mono spot) were positive, it is very difficult to prove that this illness was the cause of his current and ongoing constellation of symptoms, and very well may have been unrelated.  While there has been data suggested a relationship between EBV and CFS in the past, there is not strong evidence to prove causation and the link is somewhat controversial.  (*See* UpToDate online section on Chronic Fatigue Syndrome).

The article to which Dr. Keiler cited, the same one cited by Dr. Sewing previously, stated, "However, later observations suggest that the proposed relation between EBV infection and SEID/CFS is not correct. The virologic profiles of patients with SEID/CFS are non-specific . . . In addition, most cases of SEID/CFS either evolve insidiously or follow influenza-like or gastroenteric-type illnesses rather than mononucleosis."  This article described CFS as an independent and separate condition from EBV even though they both can result in symptoms of fatigue that are ongoing or chronic in nature.

In preparing her report, Dr. Keiler also spoke with Dr. Surah Nellore.  In an office visit

note from May 16, 2017, Dr. Sewing stated Tucker was "seen by ID [Infectious Disease] for

another verifying opinion regarding his ongoing disability as well can consider occupational

therapy . . ."  Tucker identified the infectious disease specialist, whom he saw once, as Dr.

Nellore.  Dr. Keiler summarized her communication with Dr. Nellore as follows:

> Dr. Nellore returned my call 6/22/17 at 3:20 P.M.  He recalls having seen the claimant
> recently.  He communicated to me that he does not feel that the claimant's symptoms are
> clearly related to chronic EBV infection.  He does not recommend continuation of the
> Valtrex as this is unlikely to have any effect.  He did suggest a muscle biopsy for further
> diagnosis if the claimant's symptoms of muscle weakness persists.

After summarizing the information she gathered, Dr. Keiler concluded in her report that

the "medical information supports functional imitations due to a physical condition or

combination of physical conditions as of 1/7/2017."  She also stated Tucker "does likely meet

CDC criteria for chronic fatigue syndrome based on the presence" of post-exertional malaise

lasting greater than 24 hours, sore throat, muscle pain, and waking unrefreshed.  Met Life faxed

Dr. Keiler's report to Dr. Sewing and Dr. Nellore and asked for their comments.  Met Life also

informed Tucker that the report had been sent to Dr. Sewing and Dr. Nellore for their responses.

Dr. Nellore did not respond.  Dr. Sewing responded with a letter dated July 10, 2017.  Dr.

Sewing did not agree that Tucker could work part-time.  She stated:

> As a treating physician, I feel you are better able to evaluate and make accurate
> recommendations related to what a patient may or may not be able to perform.  Clearly,
> he did have mono/Epstein-Barr infection.  He had this two times based on the mono sport
> [sic] testing and you have these records.  Before these infections, the patient was working
> and able to function in a full-time capacity.  After he had the Epstein-Barr infection, he
> deteriorated.  While an exact time or an exact infection as a cause cannot be proved, it
> cannot be disproved either.  I continue to believe that Mr. Tucker cannot work.

On August 1, 2017, Met Life affirmed its termination of Tucker's benefits under the

limited benefit provision, relying on Dr. Keiler's report to do so.  In its letter to Tucker, Met Life

stated:

> We acknowledge and considered your report you are unable to work due to EBV. We do not dispute you are unable to work full-time due to your symptoms. However, we determined the cause of your impairments is Chronic Fatigue Syndrome. Although there is data suggesting a relationship between EBV and CFS in the past, there is no strong evidence to prove causation and the link is somewhat controversial. In addition, there is no clinical evidence of an active infection process. Although the clinical evidence documents CFS this condition is limited by the plan . . .

> In conclusion, upon completion of a thorough review of all the information contained in your claim file, taking into consideration the [Independent Physician Consultant ("IPC")] findings, it was determined that the clinical evidence supported limitations due to CFS which is a limited condition. The clinical evidence did not support an active infection process [for Epstein-Barr Virus ("EBV")]. Therefore, your disability is limited to a 24 month [sic] period and you received the maximum benefits allowed under your Plan and the decision to terminate benefits as of January 7, 2017 was appropriate.

### III. Analysis

In Count I, Tucker asserts a claim for LTD benefits pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). Tucker alleges that Defendants wrongfully denied him benefits when Met Life denied Tucker's claim for long term disability beyond twenty-four months. He claims he is covered under the Plan because he is disabled due to EBV and EBV is not a limited benefits condition. Both parties have moved for summary judgment on Count I. In their briefs, the parties disagree on the appropriate standard of review, who has the burden of proof, what evidence the Court may consider, and whether Met Life abused its discretion in limiting Tucker's benefits.

### A.    Standard of Review

ERISA allows a plan participant or beneficiary to file a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]" 29 U.S.C. § 1132(a)(1)(B).

13

Courts review a denial of benefits under an ERISA plan *de novo* unless the plan gives the administrator or fiduciary discretion to determine eligibility for benefits, in which case an abuse of discretion standard of review is used. *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 111 (2008); *Waldoch v. Medtronic, Inc.*, 757 F.3d 822, 829 (8th Cir. 2014). Here, the Plan expressly grants Met Life "discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits in accordance with the terms of the Plan." Therefore, the applicable standard of review is abuse of discretion. *Glenn*, 554 U.S. at 111.

Tucker argues a modified abuse of discretion standard applies under *McIntyre v. Reliance Standard Life Insurance Co.*, 972 F.3d 955 (8th Cir. 2020), because there is a conflict of interest and procedural irregularities. Under the "modified abuse of discretion standard," a court reviews "the benefits denial for an abuse of discretion but requir[es] the administrator to support its decision with 'substantial evidence bordering on a preponderance' rather than merely 'substantial evidence.'" *Id*. at 960 (quoting *Woo v. Deluxe Corp.*, 144 F.3d 1157, 1160 (8th Cir. 1998), *abrogated in part by Glenn*, 554 U.S. 105 (2008)). Before *Glenn*, courts applied the modified abuse of discretion standard when "the administrator faces a 'palpable conflict of interest' or a 'serious procedural irregularity' arose in the review process, and [] the conflict or the procedural irregularity 'caused a serious breach of the plan administrator's fiduciary duty' to the claimant." *Id*. at 959 (quoting *Woo*, 144 F.3d at 1160). However, in *Glenn*, the Supreme Court abrogated the conflict-of-interest component and held that a conflict of interest is just one factor to be weighed in determining if there is an abuse of discretion. 554 U.S. at 115. The Eighth Circuit has not yet decided if *Glenn* also abrogated the procedural irregularity component. *McIntyre*, 972 F.3d at 959. It did make clear, however, that if the procedural-irregularities

14

component did survive *Glenn*, it only applies "if the district court determines the procedural

irregularities [] are 'egregious.'" *Id*. at 963, n.3 (quoting *Woo*, 144 F.3d at 1162).

To establish an egregious procedural irregularity, a "claimant must offer evidence that

gives rise to serious doubts as to whether the result reached was the product of an arbitrary

decision or the plan administrator's whim[.]" *Hillery v. Metro. Life Ins. Co.*, 453 F.3d 1087,

1090 (8th Cir. 2006). The alleged procedural irregularities "must be so egregious that it might

create a 'total lack of faith in the integrity of the decision making process.'" *Id*. (quoting *Layes*

*v. Mead Corp.*, 132 F.3d 1246, 1251 (8th Cir. 1998). Tucker asserts there are numerous

egregious procedural irregularities in the record including that Met Life ignored information in

Dr. Keiler's report and put its own financial interests first, Met Life did not investigate the link

between chronic EBV infections and CFS-like symptoms, and Dr. Sewing and Dr. Keiler relied

on the same article in their reports but came to different opinions about Tucker's diagnoses.

Tucker does not indicate what information Met Life ignored in Dr. Keiler's report, or

how ignoring this information creates an egregious procedural irregularity. Nor does he provide

any evidence to support his contention that Met Life put its financial interests first in making its

determination. Tucker's assertion Met Life's failure to investigate the link between chronic EBV

infections and CFS-like symptoms also does not create a procedural irregularity because it

assumes Met Life has a duty to investigate, but he provides no support for this assumption. In

fact, as the Court will discuss below, Tucker has the burden of proof to show he is disabled and

entitled to benefits under the Plan. Met Life has no burden to disprove a link between chronic

EBV infections and CFS-like symptoms when Tucker himself has not shown there is such a link.

Finally, Dr. Sewing and Dr. Keiler relying on the same article but coming to different conclusions about Tucker's diagnoses also does not reflect a procedural irregularity. It reflects a difference of opinion between two medical professionals. Met Life had no obligation to credit Dr. Sewing's opinion over Dr. Keiler's. *See Midgett v. Wash. Group Intern. Long Term Disability Plan*, 561 F.3d 887, 897 (8th Cir. 2009) ("The Supreme Court has recognized that treating physicians are not automatically entitled to special weight in disability determinations under ERISA[.]"). Furthermore, "[w]hen there is a conflict of opinion between a claimant's treating physicians and the plan administrator's reviewing physicians, the plan administrator has discretion to deny benefits unless the record does not support denial." *Johnson v. Metro. Life. Ins. Co.*, 437 F.3d 809, 814 (8th Cir. 2006).

Tucker has not shown the denial of benefits was the product of an arbitrary decision or the plan administrator's whim, or that a procedural irregularity created a total lack of faith in the integrity of the decision making process. Thus, he has not established an egregious procedural irregularity exists in this case. Because there is no procedural irregularity, the modified abuse of discretion standard does not apply.

Under the non-modified abuse of discretion standard applicable in this case, the Court reverses the plan administrator's decision only if it is arbitrary and capricious. *Midgett*, 561 F.3d at 896. "An administrator's decision is upheld if it is reasonable, that is, supported by substantial evidence," meaning "more than a scintilla but less than a preponderance." *Darvell v. Life Ins. Co. of N. Am.*, 597 F.3d 929, 934 (8th Cir. 2010). "If substantial evidence supports the decision, it should not be disturbed even if a different, reasonable interpretation could have been made." *Roebuck v. USAble Life*, 992 F.3d 732, 740 (8th Cir. 2021) (quoted case omitted). Ultimately,

16

the reviewing court "must affirm if 'a reasonable person *could* have reached a similar decision, given the evidence before him, not that a reasonable person *would* have reached that decision." *Sahulka v. Lucent Techs., Inc.*, 206 F.3d 763, 769 (8th Cir. 2000) (quoted case omitted) (emphasis in original).

As for the conflict of interest inherent in this case because Met Life is both the administrator of the policy and the claim evaluator, the Court will consider it as one of several factors in the abuse of discretion analysis. *Roebuck*, 992 F.3d at 737. What weight to give this conflict of interest depends on the facts of the case. *Id*. Greater weight is given when "(1) the insurer's claims review process was tainted by bias; (2) the medical professionals reviewing the claim were employed by the insurer; (3) the medical professionals reviewing the claim had their compensation tied to their findings; or (4) the insurer acted as little more than a rubberstamp for favorable medical opinions." *Id*. (internal quotes omitted). "[W]hen the medical record contains no evidence about the plan administrator's claims administration history or its efforts to ensure that claims assessment is not affected by the conflict, the court only gives the conflict some weight." *Id*. (quoted case omitted).

## B.   Burden of Proof

The parties disagree as to who has the burden of proof. Tucker asserts Met Life has the burden to show he is not disabled because the limitation provision is an exclusion and Met Life has the burden of proving an exclusion applies. Met Life argues the limitation is not an exclusion, thus, the burden remains with Tucker to prove he is disabled and the limitations provision does not apply to his disability.

"Because ERISA allows a beneficiary to sue 'to recover benefits due to him *under the terms of his* plan,' a plan may place the burden of proving eligibility on the beneficiary." *Johnston v. Prudential ins. Co. of Am.*, 916 F.3d 712, 715 (8th Cir. 2019). Here, the Plan requires Tucker to submit proof of his disability. Doc. 23, pg. 34. Thus, Tucker bears the burden of proving he is eligible. However, if Met Life is claiming an exclusion applies, then Met Life has the burden of proving the exclusion. *Nichols v. Unicare Life & Health Ins. Co.*, 739 F.3d 1176, 1184 (8th Cir. 2014).

Met Life ended Tucker's disability benefits under the "Limited Disability Benefits" clause of the plan. Doc. 23, pg. 43. This provision limits a claimant's disability benefits to 24 months if the claimant has one of the listed conditions which includes "Chronic fatigue syndrome and related conditions." *Id*. This clause is separate from the "Exclusions" clause. Under the "Exclusions" clause, Met Life will not pay benefits to a claimant who has a disability caused by war, participation in a riot, intentionally self-inflicted injury, attempted suicide while sane, or commission or attempt to commit or take part in a felony. *Id*. at 45. Because the limitations clause is separate from the exclusions clause, the limitations clause is not an exclusion and Met Life does not have the burden of proof. The burden remains with Tucker who must show that he is entitled to benefits and his disability does not qualify as one of the conditions listed in the limitations clause.

## C.   Evidence the Court May Consider

In response to Defendants' Statement of Material Facts, Tucker submitted "Additional Uncontroverted Material Facts" for the Court to consider. These facts are as follows:

18

EBV is [] one of the most common viruses affecting humans.  Most people carry the virus in their body in a dormant state.  Many people develop infectious mononucleosis when they are first exposed to and/or contract the virus.  Following the illness, the virus remains in the body in a dormant state.  A very rare few people suffer from a recurring and/or chronic EBV infection, which results in multiple courses of infectious mononucleosis and can result in ongoing fatigue systems even when the individual is not suffering an active EBV infection.  CFS is [a] complex and often misunderstood condition.  The term CFS was first coined in the late 1980's by the CDC to develop a research case definition for the illness, which, at the time, was called chronic Epstein-Barr virus syndrome.  The name CFS was suggested because of the characteristic persistent fatigue experienced by all those affected, and the evidence that acute or reactivated Epstein-Barr virus infection was not associated with many cases.  There is no confirmatory test to confirm a diagnosis of CFS and any diagnosis is based rather on a progression of symptoms and an elimination of other fatigue causing conditions.  CFS is an independent and separate condition from EBV though they both can result in symptoms of fatigue that are ongoing or chronic in nature.  According to the CDC, the only way to "diagnose" an individual with CFS is through a "thorough medical history, and physical examination."  Dr. Adeunmi (sic) agreed that the primary diagnosis keeping Mr. Tucker out of work was a history of chronic EBV infection.  Dr. Keiler's report does not eliminate EBV as the cause of Mr. Tucker's CFS symptoms.  Dr. Keiler [n]ever performed a physical evaluation of Mr. Tucker.  CFS is often confused for other conditions.

Defendants object to the introduction of these facts because they were not included in the Administrative Record.

It is well established that a court reviewing an ERISA determination under the abuse of discretion standard is limited to the administrative record, with few exceptions.  *Waldoch v. Medtronic, Inc.*, 757 F.3d 822, 829-830 (8th Cir. 2014).  Tucker argues the Eighth Circuit has found it appropriate to reference and cite public medical sources in order to provide context for a decision.  He cites two cases in support:  *Barnhart v. UNUM Life Ins. Co. of Am.*, 179 F.3d 583, 585-86 nn.4-7 (8th Cir. 1999) and *Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287, 299 (5th Cir. 1999).  Neither of these cases support the broad application Tucker proposes.  In *Barnhart*, the

19

Eighth Circuit cited to Stedman's Medical Dictionary to explain medical terms.  For example, they included in a footnote, "Radiculopathy is a disorder of the spinal nerve roots."  179 F.3d at 586, n.5.  In contrast, Tucker seeks to introduce facts outside the administrative record to support his claim for benefits, not simply to explain a medical term.

In *Vega*, the Fifth Circuit confirmed the general rule that the district court is limited to review of the administrative record with limited exceptions which includes explaining medical terms and procedures relating to the claim.  188 F.3d at 299.  It further stated, "evidence, including expert opinion, that assists the district court in understanding the medical terminology or practice related to a claim would be equally admissible."  *Id*.  "However, the district court is precluded from receiving evidence to resolve disputed material facts – i.e., a fact the administrator relied on to resolve the merits of the claim itself."  *Id*.  The evidence Tucker seeks to introduce is to resolve a disputed material fact – whether Tucker's symptoms arise from CFS or chronic EBV infection.  Consequently, the Court cannot consider the proposed facts taken from the CDC and National Institute of Health in its review of Met Life's decision because they were not included in the administrative record.  The Court will consider the additional facts that are drawn from the administrative record.

**D.  Abuse of Discretion Analysis**

The Court now turns to the ultimate issue in this case, whether Met Life abused its discretion when it limited Tucker's benefits to 24 months.  Applying the abuse of discretion standard, the Court finds that, based on the administrative record before Met Life, there was more than a scintilla of evidence supporting Met Life's decision.  The decision was supported by

20

substantial evidence, and "a reasonable person could have reached a similar decision[.]" *Green v. Union Sec. Ins. Co.*, 646 F.3d at 1042, 1050 (8th Cir. 2011).

Evidence in the administrative record establishes Tucker suffered from CFS.  Beginning in 2016, Dr. Sewing lists CFS, or myalgic encephalomyelitis, another name for CFS, as one of Tucker's diagnoses. While she also lists chronic EBV infection, neither she nor Tucker provide evidence of an active infection, only of prior infections.  At times in her notes, she suspects Tucker may have developed CFS after contracting mono.  But she never provides any support for this beyond one citation to the UpToDate article which stated that while it was hypothesized EBV could be responsible for causing CFS, "later observations suggest that the proposed relation between EBV infection and SEID/CFS is not correct."  In a letter to Met Life, dated April 25, 2016, Dr. Sewing stated, "Ryan currently has chronic fatigue syndrome."

Dr. Adewunmi found "[t]he primary diagnosis supported by the medical information on file is a history of chronic EBV infection with chronic fatigue."  However, he also concluded it was unusual that Tucker had reported no improvement almost three years after his EBV infection.  He also believed Tucker was not disabled.  Dr. Keiler, after reviewing Tucker's medical records and speaking with Dr. Sewing and Dr. Nellore, reported that Tucker's EBV serologies were "consistent with prior, not active EBV infection" and that the "clinical picture is consistent with prior infection without any evidence of ongoing chronic infection."  When Dr. Keiler spoke with Dr. Nellore, he agreed with Dr. Keiler that Tucker's symptoms are not clearly related to chronic EBV infection.  Dr. Keiler found Tucker meets the CDC criteria for chronic fatigue syndrome.

While there is some evidence in the record from Dr. Sewing that Tucker suffers from chronic EBV infection, there is also evidence he suffers from CFS.  Because Met Life's decision is supported by a reasonable explanation, the arbitrary and capricious standard does not allow the Court to disturb that decision merely because "a different reasonable interpretation could have been made."  *Schatz v. Mut. of Omaha Ins. Co.*, 220 F.3d 944, 949 (8th Cir. 2000).

The inherent conflict of interest in this case, because Met Life both evaluates and pays the claims, does not change the Court's decision.  There is no evidence of biased claims administration on the part of Met Life.  *Manning v. Am. Republic Ins. Co.*, 604 F.3d 1030, 1039 (8th Cir. 2010).  There is some evidence Met Life tried to reduce the risk of biased claims administration in this case by hiring Dr. Keiler to review Tucker's records.  Dr. Keiler is an independent physician consultant who was hired through a vendor.  There is no evidence her compensation was tied to her findings or that Met Life "acted as little more than rubberstamp for favorable medical opinions."  *Roebuck*, 992 F.3d at 737.  For these reasons, the Court gives the conflict only some weight in its analysis.

Tucker also argues Met Life unreasonably interpreted the Plan.  He asserts the Plan only limits benefits to 24 months if the claimant is "disabled due to" one of the listed conditions, not if the disabling condition is one of several conditions the beneficiary is suffering from or if the stated condition is caused by another condition.  In his case, Tucker argues his CFS is caused by chronic EBV infection, therefore, the limitation should not have applied.

When reviewing if an administrator's plan interpretation constitutes an abuse of discretion, the Court considers the *Finley*[2] factors which include whether: "(1) the administrator's interpretation is consistent with the Policy's goals; (2) the administrator's interpretation renders any of the Policy's language meaningless or internally inconsistent; (3) the administrator's interpretation conflicts with the substantive or procedural requirements of the ERISA statute; (4) the administrator has interpreted the relevant terms consistently; and (5) the interpretation contradicts the Policy's clear language." *Roebuck*, 992 F.3d at 739 (cleaned up) (quoted case omitted).  When an administrator evaluates facts to determine the plan's application to a particular case, the Court reviews the administrator's decisions under the substantial evidence standard, as the Court did here.  *Boyer v. Schneider Elec. Holdings, Inc.*, 993 F.3d 578, 581 (8th Cir. 2021).  The crux of Tucker's argument is that Met Life erred in determining he was disabled due to CFS, not that it interpreted the terms of the Plan incorrectly.  For this reason, the Court applies the substantial evidence standard rather than the *Finley* factors.  Under the substantial evidence standard, it is not unreasonable for Met Life to have concluded Tucker was disabled due to CFS, not chronic EBV infection or as a result of chronic EBV infection.

## IV. Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff Ryan Tucker's Motion for Summary Judgment (Doc. 50) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants Express Scripts Health and Welfare Benefits Plan, Metropolitan Life Insurance Company, Express Scripts, Inc.'s Motion for

---

[2] *Finley v. Special Agents Mut. Benefit Ass'n, Inc.*, 957 F.2d 617, 621 (8th Cir. 1992).

Summary Judgment on Count I of Plaintiff's Complaint (Doc. 53) is **GRANTED** and this matter

is **DISMISSED, with prejudice**.

A separate judgment will accompany this Memorandum and Order.

Dated this 25th day of March, 2022.

/s/ Noelle C. Collins
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE